IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES B. RICHMOND,

               Petitioner,               No. CIV S-04-0769 FCD DAD P

    vs.

KATHY PROSPER, et al.,

               Respondents.           <u>FINDINGS & RECOMMENDATIONS</u>

_____/

          Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a January 2003 decision by the Solano County Superior Court revoking his term of probation originally granted in August 2001.  He seeks relief on the grounds that his rights to due process and confrontation were violated by the admission of hearsay evidence at his probation revocation hearing.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////

/////

/////

/////

1

BACKGROUND[1]

In August 2001, Richmond pled no contest to [drug related] charges and admitted the bail enhancement and the prior conviction allegation.[2]  His written waiver noted a maximum punishment of 10 years eight months.  Richmond had been promised a grant of probation, with a requirement that he complete a residential treatment program.  If the probation department recommended a prison term, he reserved the right to withdraw his pleas.  Defense counsel joined in the written waiver; the prosecutor opposed it.  Based on this plea, the trial court found Richmond guilty.

In November 2001, the trial court suspended imposition of sentence.  Richmond was granted probation for three years.  The terms of probation required that he serve six months in county jail, that he complete a residential drug treatment program, and that he report any arrest to his probation officer within two days.

In February 2002, Richmond entered a residential drug treatment program.  In September 2002, he was unsuccessfully discharged from the program because the staff believed that he was failing to progress in treatment.  His probation officer sought to revoke his probation on this ground and a bench warrant was issued for his arrest.

In November 2002, Richmond was arrested on the bench warrant and charged with new misdemeanors.[3]  He did not advise his probation officer of this new arrest because he was being held in custody for violating probation.  In December 2002, he denied that he failed to complete his residential treatment program.  In January 2003, defense counsel argued that notice had not been given that Richmond was alleged to have violated probation for a second ground based on failure to report his November 2002 arrest to his probation officer.  The trial court found that Richmond had violated probation for two reasons – failure to successfully complete residential drug treatment and by failure to report his new arrest.  In February 2003, he was sentenced to a total term of nine years eight months in state prison – a midterm of four years for possession of cocaine base for sale; three years for his prior conviction of this offense; a consecutive term of eight months –

---

[1]  The following summary is drawn from the September 19, 2003 opinion by the California Court of Appeal for the First Appellate District (hereinafter Opinion), at pgs. 2-3, filed in this court as Exhibit F to respondents' Answer.

[2]  Richmond also pled guilty to a misdemeanor vandalism charge in another matter.  (See former Pen. Code, § 594, subd. (b)(4) [Stats. 1999, ch. 83, § 144].)

[3]  These misdemeanor charges were later dismissed.

1   one-third of the midterm – for possession of marijuana for sale;
2   and two years for the bail enhancement.  (See §§ 11351.5, 11359, 11370.2, subd. (a); see also Pen. Code, § 12022.1.)

3                                    ANALYSIS

4   I.  Standards of Review Applicable to Habeas Corpus Claims

5               A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

6   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

7   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

8   Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

9   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

10  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

11  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

12  (1972).

13              This action is governed by the Antiterrorism and Effective Death Penalty Act of

14  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

15  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

16  habeas corpus relief:

17              An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall
18              not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the
19              claim -

20              (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as
21              determined by the Supreme Court of the United States; or

22              (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the
23              State court proceeding.

24  28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

25  Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

26  /////

                                         3

1    The court looks to the last reasoned state court decision as the basis for the state

2    court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

3    court reaches a decision on the merits but provides no reasoning to support its conclusion, a

4    federal habeas court independently reviews the record to determine whether habeas corpus relief

5    is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

6    Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

7    reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

8    AEDPA's deferential standard does not apply and a federal habeas court must review the claim

9    de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

10   1167 (9th Cir. 2002).

11   II.  Use of Hearsay Evidence

12   Petitioner's sole claim is that the state trial court's use of hearsay evidence to find

13   that he violated the terms of his probation by failing to complete a residential drug rehabilitation

14   program violated his rights to due process and to confront the witnesses against him.  The

15   California Court of Appeal fairly described the background to this claim as follows:

16   At the January 2003 probation revocation hearing, Richmond's
     probation officer testified that she had taken over as his probation
17   officer in October 2002.  His case file noted that a bench warrant
     had been issued for his arrest in September 2002.  She also testified
18   that the case file included a letter from his residential drug
     treatment program stating that it had discharged him from their
19   program on September 2, 2002.  The drug treatment counselor
     wrote that Richmond was discharged from the program because he
20   was manipulative, engaged in negative and argumentative
     behavior, had altercations with his peers and was disrespectful.
21   The probation officer testified that she recognized the stationery
     used by the treatment facility and person who sent the letter.
22   Richmond objected to the trial court's admission of this evidence
     on hearsay grounds, arguing that his new probation officer had no
23   personal knowledge of the facts about which she testified.  The
     trial court overruled this objection, finding the evidence to be
24   reliable hearsay that it could consider at a probation revocation
     hearing.
25
     The defense did not admit any evidence or offer any testimony at
26   the hearing to dispute the case file or the treatment program letter.

4

1

> After the close of evidence, Richmond's attorney renewed her
> hearsay objection, arguing that he should not be found to have
> violated probation based on facts about which the testifying
> witness had no personal knowledge.  Again, the trial court found
> that the evidence – the probation file and the letter from the
> treatment program – were business records[4] that constituted
> reliable hearsay.

(Opinion at 4.)

In his claim before this court, petitioner does not deny that he was discharged

from the drug treatment program. However, he argues that:

> the *sole* evidence offered to prove that he was at fault was a written
> report, prepared (at least in part) by a counselor at the drug
> treatment program who did not appear in court.  The text of the
> report described petitioner's conduct at the drug treatment
> program, as well as his "convict street mentality, [his] arrogant and
> self righteous attitude", his "negative behavior . . . rationalization
> and justification for his behavior."  It was read into evidence by a
> deputy probation officer who had no personal knowledge of any of
> the assertions made in it.

(Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus

(P&A) at 1-2.)  Petitioner concedes that hearsay evidence may be admitted at a parole revocation

hearing upon a finding of good cause.  However, he contends that because no finding of good

cause was made by the trial court in this case, the admission of the hearsay evidence violated his

due process and confrontation rights.  (Id. at 2.)  In addition, petitioner argues:

> No finding of good cause was made here.  No balancing was
> conducted, to determine whether the state's need to use hearsay
> evidence outweighed petitioner's need to confront adverse
> witnesses.  The state courts approved the admission of the report
> simply on the ground that it was "documentary" rather than
> "testimonial" evidence.  Petitioner submits that the state courts

/////

/////

---

4  Hearsay evidence of a writing made as a record of an event is admissible when offered
to prove that event if (1) the writing was made in the regular course of business; (2) it was made
at or near the time of the event; (3) the custodian of the writing or other qualified witness testifies
to its identity and the mode of its preparation; and (4) the sources of information and method and
time of preparation were such as to indicate its trustworthiness.  (Evid. Code § 1271.)

1    thereby violated his right to the "minimum requirements of due
     process" at the revocation hearing.
2

3    (Id.)[5]

4          The U.S. Supreme Court has recognized that the decision to revoke probation

5    typically involves two components: "(1) a retrospective factual question whether the probationer

6    has violated a condition of probation; and (2) a discretionary determination by the sentencing

7    authority whether violation of a condition warrants revocation of probation." Black v. Romano,

8    471 U.S. 606, 611 (1985).  Relying on such authority, petitioner contends that the "simple fact of

9    his discharge from the program would not have been sufficient to support a decision to remand

10   him to prison." (P&A at 5.)  Petitioner argues that "the state was required to prove that the

11   discharge was due to his fault." (Id.)  He asserts that unreliable hearsay evidence regarding his

12   behavior at the treatment program was improperly introduced to establish that the violation

13   warranted revocation of his probation.  (P&A at 4-5.)  Finally, petitioner argues that the state did

14   not make a required showing that the treatment program counselor who wrote the report was

15   unavailable as a witness.  (Id. at 4.)

16         After examining state and federal law regarding the admission of hearsay evidence

17   at probation revocation proceedings, the California Court of Appeal denied petitioner's due

18   process and confrontation claims, reasoning as follows:

19   _____

20         [5] The trial court found petitioner guilty of a probation violation, ruling as follows:

21            Reliable hearsay is allowed in a probation violation hearing.  One
             of the reasons is that if we required all of these rehabilitation
22            programs to continuously come to court to testify, we are going to
             lose the program.  And the hearsay is reliable.  It's business records
23            from probation.  It's on stationery from the Genesis House,
             whatever program, to the Probation Department, and the record
24            indicates that he's to finish the program February of 2003.  He's
             arrested long before that.  And that certainly is evidence that
25            corroborates the hearsay he didn't finish the program.

26   (Answer, Ex. B at 22.)

                                        6

On appeal, Richmond notes that the probation officer testified not just to the fact of his discharge, but about the underlying reasons for it – reasons that put him at fault.  He reasons that the evidence of the reasons for his discharge contained in the discharge letter takes the letter out of the category of documents that are admissible at a probation revocation hearing without violating his right to confront the declarant.  We disagree.  The conditions of Richmond's probation required him to successfully complete a residential drug treatment program.  Once the letter established the fact of his discharge without first completing the program, the basis of his probation revocation was established.  In this case, Richmond offered no explanation for his discharge that might have led the trial court to offer him another opportunity to attempt such a treatment program.  In these circumstances, the evidence contained in the letter about why he was discharged was not relevant to the trial court's determination of whether Richmond had violated the terms of his grant of probation.

Thus, the admission of documentary evidence at a probation revocation hearing does not necessarily violate the probationer's right to confront and cross-examine the declarant if the hearsay is reliable.  Recently, the Third District Court of Appeal concluded that a report from the manager of a counseling service advising that a probationer failed to attend court-ordered counseling is documentary evidence that has traditionally been found to be admissible at a probation revocation hearing.  (See People v. O'Connell, supra, 107 Cal.App.4th at p. 1066.)  The report was prepared contemporaneous to and specifically for the purpose of use at the probation revocation hearing.  The O'Connell court found that similar reports were routinely received without undertaking the additional burden of calling the author to authenticate them because they were prepared in response to a court referral.  (Id. at pp. 1066-1067.)  Although the defendant speculated that the report might be unreliable, he offered no evidence in support of this claim.  (See id. at p. 1067.)  The Third District concluded that on these facts, the defendant had failed to undermine the trial court's conclusion that the report bore sufficient indicia of reliability and trustworthiness to be admitted into evidence at the probation revocation hearing.  (Ibid.)

Our case presents facts that are indistinguishable from those in O'Connell.  In this matter, the trial court relied on two documents about which the probation officer testified – the notes left in Richmond's case file by his previous probation officer and a letter from the counselor of the drug treatment program.  The trial court twice concluded that these two documents were reliable.  The determination whether hearsay evidence is reliable rests within a trial court's discretion.  We will not disturb that finding on appeal, absent an abuse of that discretion.  (Arreola, supra, 7 Cal.4th at p. 1156; People v. Maki, supra, 39 Cal.3d at p. 710 [car rental receipt]; People v. O'Connell, supra, 107 Cal.App.4th at p. 1066.)

7

1   Richmond offered no evidence in the trial court to challenge these
2   documents or to suggest any irregularity about them.  On appeal,
    he does not argue that they were inaccurate.  Under these
3   circumstances, we conclude that the trial court did not abuse its
    discretion in finding the case file and the treatment program letter
4   to be reliable.[6]  The trial court properly considered these two
    documents when considering whether Richmond had violated the
5   term of his probation requiring him to successfully complete a
    residential drug treatment program.

6   (Opinion at 6-7.)

7           In Morrissey v. Brewer, 408 U.S. 471, 489 (1972) and Gagnon v. Scarpelli, 411

8   U.S. 778, 786 (1973), the United States Supreme Court held that the Due Process Clause of the

9   Fourteenth Amendment allows probationers and parolees a limited right "to confront and

10  cross-examine adverse witnesses . . . unless the hearing officer specifically finds good cause for

11  not allowing confrontation."  United States v. Simmons,  812 F.2d 561, 564 (9th Cir. 1987).  In

12  this regard, the Sixth Amendment right to confrontation does not apply to revocation

13  proceedings.  United States v. Hall, 419 F.3d 980, 985 (9th Cir. 2005) (citing Morrissey, 408

14  U.S. at 480).  "Rather, a due process standard is used to determine whether hearsay evidence

15  admitted during revocation proceedings violates a defendant's rights."  Id.  Less process is due at

16  a revocation hearing than during a criminal trial, and the trial court at a probation revocation

17  hearing may consider documentary evidence that may not meet usual evidentiary requirements.

18  Morrissey, 408 U.S. at 489; Gagnon, 411 U.S. at 789.  For instance, the trial court in a revocation

19  proceeding may consider, where appropriate, "conventional substitutes for live testimony,

20  including affidavits, depositions, and documentary evidence."  Gagnon, 411 U.S. at 783 n.5.  See

21  also Standlee v. Rhay, 557 F.2d 1303, 1307-08 (9th Cir. 1977) (finding a lack of prejudice and

22  rejecting a petitioner's claim that his due process rights were violated in revocation proceedings

23  when a transcript was relied upon instead of live testimony); Washington v. Gomez, No. C-94-

24  _____

25          [6]  In light of our conclusion that the trial court could properly consider this reliable
    hearsay evidence, we need not determine whether the probation officer's testimony about the two
26  documents was also admissible because they fell within the business records exception to the
    hearsay rule.  (See Evid. Code § 1271.)

1    4160 SI, 1996 WL 163010, at *2 (N.D. Cal. April 1, 1996).  In defining the scope of the due

2    process protection in revocation proceedings, the Supreme Court has required procedural

3    guarantees that are sufficient to assure that the finding of a violation will be "based on verified

4    facts and that the exercise of discretion will be informed by an accurate knowledge of the

5    parolee's behavior." Morrissey, 408 U.S. at 484.  See also Gagnon, 411 U.S. at 785.

6            In cases on direct appeal involving the right to confrontation under the decision in

7    Morrissey, the Ninth Circuit employs "a process of balancing the [releasee's] right to

8    confrontation against the Government's good cause for denying it." United States v. Martin, 984

9    F.2d 308, 310 (9th Cir. 1993) (quoting Simmons, 812 F.2d at 564).  See also Hall, 419 F.3d at

10   986; United States v. Comito, 177 F.3d 1166, 1170 (9th Cir. 1999).  Relevant factors in this

11   balancing process include: (1) the importance of the evidence to the court's finding; (2) the

12   releasee's opportunity to refute the evidence; (3) the difficulty and expense of obtaining

13   witnesses; and (4) traditional indicia of reliability borne by the evidence.  United States v.

14   Walker, 117 F.3d 417, 420 (9th Cir. 1997).  Applying this balancing test, the Ninth Circuit has

15   repeatedly concluded that the admission of hearsay evidence in the form of unauthenticated

16   copies of state court criminal records does not violate a probationer's confrontation rights.  Thus,

17   in United States v. Miller, 514 F.2d 41 (9th Cir. 1975), the court noted that the probationer in that

18   case had not challenged the accuracy of the state court records and that the state court had found

19   them sufficiently reliable.  Id. at 42.  In Simmons, the Ninth Circuit likewise concluded that the

20   admission of copies of hospital records in a probation revocation proceeding did not deny the

21   probationer's right to due process because they bore "traditional indicia of reliability" and were

22   therefore admissible in light of the "diminished procedural protections which attach to a

23   probation revocation proceeding." 812 F.2d at 564-65.  Finally, in Walker, the court held that a

24   probationer's right to confrontation was not violated by the admission of a probation officer's

25   testimony regarding the content of official records maintained by another probation officer

26   /////

9

1   especially since the probationer did not dispute either the substance or the reliability of the

2   hearsay testimony.  117 F.3d at 420.[7]

3              After a review of the record, this court concludes that the state trial court did not

4   violate petitioner's right to due process when it relied on the hearsay testimony of petitioner's

5   probation officer to find that petitioner had violated the terms of his probation by failing to

6   complete the drug treatment program.  The state court record reflects that petitioner was required

7   to commit himself to Genesis House treatment program and to "remain there until released by the

8   director upon satisfactory completion." (Answer, Ex. A at 93.)  The discharge summary report

9   relied upon by petitioner's probation officer during her testimony at the revocation proceedings

10  reflected that petitioner was not released by the director upon satisfactory completion of the

11  program but, rather, was discharged from the program prior to satisfactory completion.

12  Specifically, the report reflected that petitioner was terminated from the program on September

13  2, 2002, well before his projected completion date of February 22, 2003.  (Answer, Ex. B at 11.)

14  These facts, standing alone, were sufficient to establish that petitioner had not complied with this

15  term of his probation.[8]

16              The summary report was written on the stationary of Genesis House by a

17  counselor known to petitioner's probation officer.  (Id. at 9-11.)  Petitioner did not dispute the

18  authenticity or the accuracy of the report.  Further, petitioner does not dispute that he had a full

19  opportunity to show that he did not violate the conditions of probation.  Indeed, after petitioner's

20  _____

21      [7] In contrast, the Ninth Circuit has employed this same balancing test to find a due
     process violation resulting from the use of hearsay evidence at probation revocation proceedings
22   where the evidence was critical to the determination at issue, the facts were contested, the form
     of the hearsay was the least reliable and the source questionable.  See Comito, 177 F.3d at 1170-
23   71 (the admission of unsworn verbal statements by the probationer's ex-girlfriend, who claimed
     to be the victim of the offense, to find a probation violation constituted a due process violation
24   because the evidence was "the least reliable type of hearsay").

25      [8] This court has not been provided with the discharge summary report from the Genesis
     House treatment program.  However, petitioner's probation officer testified extensively as to its
26   contents and petitioner did not dispute, and has not disputed before this court, the accuracy of her
     testimony. (Id. at 9-19.)

10

1   counsel complained about the difficulty of obtaining information from petitioner's probation

2   officer regarding petitioner's discharge from the treatment program, the judge noted that

3   petitioner could "take the stand." (Id. at 18.)  Petitioner declined to do so and made no attempt to

4   challenge the accuracy of the information revealed by the testimony of his probation officer.  Nor

5   did petitioner offer any evidence to refute the government's claim that he did not satisfactorily

6   complete the drug rehabilitation program.  In this regard, the court notes that in an undated letter

7   to the trial judge, petitioner acknowledged that after being at the Genesis House treatment

8   program for 188 days he was "ask[ed] to leave."  (Answer, Ex. A at 122.)  This evidence

9   corroborates the testimony of petitioner's probation officer that petitioner did not satisfactorily

10  complete the rehabilitation program as required by the conditions of his probation.

11          This court agrees with the conclusion of the state appellate court that testimony

12  regarding the specific behavioral issues that led to petitioner's discharge was irrelevant to the

13  question whether petitioner successfully completed the program.  Essentially, petitioner was

14  required to complete a residential drug treatment program in order to continue on probation but

15  was asked to leave before he was able to complete the program.  Reliable documentary evidence

16  established this fact.  The specifics of petitioner's behavior while attending the program were

17  largely irrelevant and, in any event, were left uncontradicted by petitioner at the revocation

18  hearing.  It is not surprising that petitioner had little interest in confronting the evidence of his

19  specific behavior at Genesis House, since such evidence was relatively insignificant to the

20  ultimate question of whether he violated the terms of his probation by being discharged before

21  completing the program.  "The weight to be given the right to confrontation ... depends on two

22  primary factors: the importance of the hearsay evidence to the court's ultimate finding and the

23  nature of the facts to be proven by the hearsay evidence."  Hall, 419 F.3d at 986 (quoting Comito,

24  177 F.3d at 1170).  If petitioner wished to establish that his probation violation did not warrant

25  revocation of probation, he could have produced some evidence or argument on this point.  As

26  discussed above, he chose not to do so.

1    Petitioner is correct that the record does not show the state court engaged in a

2  balancing test to ascertain whether the prosecution had good cause for failing to secure an

3  employee of the Genesis House as a witness to testify at the revocation hearing as to the contents

4  of the discharge report.  However, this court concludes that any error in failing to conduct a

5  balancing test was harmless under the circumstances of this case.  See Comito, 177 F.3d at 1170

6  (improper admission of hearsay testimony is subject to harmless error review).  For the reasons

7  discussed above, the testimony of petitioner's probation officer, which was based on an

8  undisputed official record of the drug treatment program, was reliable information that gave the

9  trial court sufficient knowledge of petitioner's performance with respect to the conditions of his

10  probation.  Morrissey, 408 U.S. at 484.

11    Accordingly, no due process violation resulted from the trial court's reliance at the

12  revocation hearing on the testimony from petitioner's probation officer that a letter from the

13  residential drug treatment program stated that petitioner had discharged him from their program

14  because he was manipulative, engaged in negative and argumentative behavior, had altercations

15  with his peers and was disrespectful.  The opinion of the California Court of Appeal rejecting

16  petitioner's argument to the contrary is not an unreasonable application of clearly established

17  federal law, nor was it based upon an unreasonable determination of the facts of this case.  See

18  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to relief on his due process claim.

19                                      CONCLUSION

20    For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

21  application for a writ of habeas corpus be denied.

22    These findings and recommendations are submitted to the United States District

23  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

24  days after being served with these findings and recommendations, any party may file written

25  objections with the court and serve a copy on all parties.  Such a document should be captioned

26  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12

1  shall be served and filed within ten days after service of the objections.  The parties are advised

2  that failure to file objections within the specified time may waive the right to appeal the District

3  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4  DATED: January 24, 2008.

5

6  _____

7  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

8  DAD:8
   richmond769.hc

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26